**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM TOBIAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| VILLAGE OF VILLA PARK, ILLINOIS, | ) |
| a Municipal Corporation, RICHARD KEEHNER, | ) |
| JR., individually and in his official capacity; | ) |
| Police Chief ROBERT PAVELCHIK, JR., | ) |
| Deputy Chief of Police ROBERT BUDIG, | ) |
| ROBERT TAGLIA, individually and in his | ) |
| Official capacity as Village Trustee, JOHN DAVIS, | ) |
| Individually and in his official capacity as Village | ) |
| Trustee, | ) |
| | ) |
| Defendants | ) |

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, WILLIAM TOBIAS ("Plaintiff" or "Tobias") by and

through his attorneys, RICHARD F. BLASS & ASSOCIATES, LLC, and complains of

Defendants VILLAGE OF VILLA PARK, ILLINOIS ("Village"), RICHARD KEEHNER

("Keehner"), ROBERT PAVELCHIK, JR., ("Pavelchik" or "Chief"), ROBERT BUDIG

("Budig" or "Deputy Chief"), ROBERT TAGLIA, ("Taglia" or "Trustee Taglia"); and JOHN

DAVIS, ("Davis" or "Trustee Davis") as follows:

**PARTIES**

1.      Plaintiff is an individual who is a citizen of the United States and during all times

relevant to this Complaint has been a resident of Elmhurst, Illinois.

2.      Defendant Village, is a municipal corporation organized under the laws of the

State of Illinois.

3.      At all times relevant to the Complaint, Defendant Keehner served as the Village Manager of the Village of Villa Park.

4.      At the time that Plaintiff was discharged from his position with the Village, Pavelchik served as Police Chief for the Village of Village Park, having been appointed by the Village.

5.      At all times relevant to the Complaint Budig served as Deputy Chief of Police for the Village of Villa Park.

6.      At all times relevant to the Complaint, Taglia served as a Trustee for the Village of Villa Park, having been elected to that position in 2009.

7.      At All times relevant to the Complaint, Davis served as a Trustee for the Village of Villa Park, having been elected to that position in 2009.

## JURISDICTION AND VENUE

8.      This action arises under, and jurisdiction is founded on 28 USC § 1331 and 1343(4). This Court also has jurisdiction of this matter pursuant to 42 USC §1983.

9.      This Court also has supplemental jurisdiction of Plaintiff's state claims pursuant to 28 USC §1367.

10.     Venue is proper pursuant to 28 USC § 1391 as this is the judicial district where the events giving rise to the claims occurred and where all of the parties reside.

## FACTS COMMON TO ALL COUNTS

11.     Plaintiff served as a part time police officer for the Village from on or about September 1, 2010 to in or about June of 2011.

12.     On or about June 23, 2011, Plaintiff was hired by the Villa Park Board of Fire and Police Commissioners as a full time police officer for the Village.

13.     While serving as a full time police officer, Plaintiff met or exceeded performance expectations for the Village and the Villa Park Police Department.

14.     At all times relevant to this Complaint, Section 19-103 (a) of the Municipal Code of the Village provided that newly hired police officers shall serve a two year probationary period.

15.     At all times relevant to this Complaint, Section 19-103 of the Municipal Code of the Village provided certain procedures for termination of probationary police officers as follows:

> (c)     The review and determination of successful completion of the probationary period shall be determined by the board of fire and police commissioners pursuant to its rules and regulations.

> (d)     If the board of fire and police commissioners determines that the police department recruit has not successfully performed his/her probationary period, the recruit's period of employment shall be terminated.

16.     At all times relevant to this Complaint, Plaintiff was serving his probationary period as a full time police officer for the Village.

17.     On information and belief, in or about January of 2012, despite Plaintiff's excellent performance as a full time police officer, Defendants Taglia, Davis, Budig and Keehner began to convey false information about Plaintiff's character and actions as follows:

> a.     That former Police Chief John Heidelmeier had made bad hiring decisions on some lateral hires into the Police Department.

> b.     That one lateral hire had been fired as a police officer from the Village of Oak Brook.

> c.     That the same police officer who was fired from the Village of Oak Brook had stalked an Oak Brook Village Trustee and vandalized her home.

d. That the same police officer who was fired from the Village of Oak Brook followed Trustee Taglia home from a Village Board meeting, and requiring Taglia to call a supervisor of the Villa Park Police Department to restrain said police officer from following him.

e. That Plaintiff was "no good" and should not remain on the police force.

18. Plaintiff was the only Village full time police officer who formerly worked as an Oak Brook police officer.

19. Plaintiff had been hired by the Village as a "lateral hire" during the period of time that John Heidelmeier served as Police Chief.

20. The above referenced statements made by Taglia, Davis, Keehner and Budig occurred at or around the time that John Heidelmeier left employment with the Village.

21. Robert Pavelchik, Jr. was appointed Chief of Police after the separation of service of John Heidelmeier.

22. On or about February 28, 2012, while Plaintiff's wife was laboring in the birth of their child, Budig called Plaintiff and told him to report to the Police Department, despite having full knowledge that Plaintiff's wife was in active labor.

23. Once Plaintiff reported to the Police Department at the direction of Budig, Defendant Pavelchik, who had served as a member of the Department for less than 90 days at that point, notified Plaintiff that he was discharged from his employment as a police officer for the Village.

24. Neither Pavelchik nor Budig offered a reason for Plaintiff's discharge.

25. To date, Plaintiff has received no reason for his discharge.

26. Thereafter Plaintiff was unable to become re-employed as a police officer with a municipality despite applying for many positions and being a well qualified candidate.

27.     On information and belief, the uniform practice of the Village and its officials is
to terminate probationary police officers without notifying the Villa Park Board of Fire and
Police Commissioners or obtaining its determination that a probationary police officer had not
successfully completed his probationary employment, as required by Village ordinance.

28.     Plaintiff had not engaged in or been charged with or accused of any misconduct
during his employment with Defendants.

## COUNT I

## VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS PURSUANT TO 42 U.S.C 1983

29.     Plaintiff realleges Paragraphs 1 through 28 of this Complaint as if more fully set
forth herein.

30.     42 U.S.C §1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other
> proper proceeding for redress… 42 U.S.C. §1983

31.     The Village, in adopting Section 19-103 of its Municipal Code created a property
right in employment for probationary police officers.

32.     The Village, a Municipal Corporation organized under the laws of the State of
Illinois, and their agents and officials,  agreed to be bound to the due process requirements
created and adopted in their Municipal Code, specifically Section 19-103.

33.     As a probationary police officer, Plaintiff had the due process protections in his employment granted by 42 U.S.C. §1983.

34.     Defendants failed to follow the procedures for removal of a probationary police officer as are articulated in Section 19-103 of the Village's Municipal Code.

35.     By violating Section 19-103 of the Village's Municipal Code, Defendants have also violated Plaintiff's rights secured by 42 U.S.C. §1983.

36.     Defendant Village, by engaging in a pattern and practice of violating the due process rights of terminated probationary employees is liable in this action.

37.     42 U.S.C.§1988 provides that the Court may allow the prevailing party in an action to enforce the provisions of 42 U.S.C. §1983 a reasonable attorney's fee as part of the costs of suit.

**WHEREFORE,** Plaintiff respectfully requests that this Count enter an Order as follows:

> a.  That Plaintiff is reinstated to his position as a full time police officer for the Village of Villa Park
>
> b. That Plaintiff is compensated for all lost salary, benefits and other consequential damages sustained as a result of his denial of due process.
>
> c. That Defendants shall pay Plaintiff's costs in enforcing his due process rights, including Plaintiff's reasonable attorney's fees.
>
> d. Such other relief as this Court deems appropriate.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38.     Plaintiff restates and realleges Paragraphs 1 through 37 of this Complaint as if more fully set forth herein.

39.     Defendants Taglia, Keehner, Davis and Budig  made knowingly false statements about the character and actions of Plaintiff with the intent to harm Plaintiff.

40.     Budig's action in demanding that Plaintiff report to the Police Department, knowing that Plaintiff's wife was in labor, in order to fire Plaintiff in violation of his due process rights was also designed to harm Plaintiff.

41.     Defendants' conduct was extreme and outrageous.

42.     Defendants acted with intent to inflict severe emotional distress upon Plaintiff and Defendants had knowledge that their conduct would likely inflect said severe emotional distress.

43.     That Defendants Taglia, Keehner, Davis and Budig acted in concert and misused their positions with the Village in order to inflict said severe emotional distress on Plaintiff.

44.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, in a manner and extent that will be proven at trial.

**WHEREFORE,** Plaintiff prays that this Court enters an Order as follows:

a. That Plaintiff is awarded compensatory and consequential damages.

b. That Plaintiff is awarded punitive damages against Taglia, Keehner, Davis and Budig.

c. That this Court award other relief as it deems appropriate.

## COUNT III

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

45.     Plaintiff restates and realleges Paragraphs 1 through 44 of this Complaint as if more fully set forth herein.

46.     Plaintiff had a reasonable expectation of continuing his employment with the Village.

47.     Defendants had knowledge of Plaintiff's expectation of continued employment with the Village.

48.     On information and belief, Taglia, Keehner, Davis and Budig maliciously intended to engineer Plaintiff's termination for no conduct or performance related reason.

49.     Defendants' Taglia, Keehner, Davis and Budig's wrongful and malicious conduct alleged above constituted a purposeful interference with Plaintiff's continued employment with the Village.

50.     The actions of Defendants Taglia, Keehner, Davis and Budig were the proximate cause of Plaintiff's discharge.

51.     The actions of Defendants Taglia, Keehner, Davis and Budig as described above were committed intentionally and with malice.

52.     As a direct and proximate result of the wrongful and malicious conduct alleged above, Plaintiff has suffered the following:

    a. Plaintiff lost his job

    b. Plaintiff has lost significant wages and benefits;

    c. Plaintiff's reputation has been irreparably harmed;

    d. Plaintiff has suffered emotional distress as a result of being unable to support his family.

    e. Plaintiff has suffered diminished employment prospects as a result of both the wrongful and malicious statements of Defendants as well as possessing an employment record of termination from the Village.

    f. Plaintiff has suffered other losses which will be proven at trial.

WHEREFORE, Plaintiff prays that this Court enter an Order as follows:

a. That Plaintiff is awarded all damages suffered as a consequence of Defendants' wrongful actions.

b. That Plaintiff is awarded punitive damages against Taglia, Keehner, Davis and Budig.

c. That Plaintiff is awarded such other relief as this Court deems appropriate.

Respectfully submitted,
RICHARD F. BLASS & ASSOC., LLC

By: /s/ Richard F. Blass
One of Plaintiff's Attorneys

Richard F. Blass
RICHARD F. BLASS & ASSOCIATES, LLC
Attorneys for Plaintiff
770 Church Road
Suite H
Elmhurst, Illinois 60126
630-782-2000 (telephone)
630-782-2022 (facsimile)
rblass@blass-law.com