UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM TOBIAS, | ) |
| | ) Case No. 13-cv-1475 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| VILLAGE OF VILLA PARK, ILLINOIS, a | ) |
| Municipal Corporation, RICARD KEEHNER, JR., | ) |
| individually and in his official capacity; Police | ) |
| Chief ROBERT PAVELCHIK, JR., Deputy Chief | ) |
| of Police ROBERT BUDIG, ROBERT TAGLIA, | ) |
| individually and in his Official capacity as a Village | ) |
| Trustee, and JOHN DAVIS, individually and in his | ) |
| official capacity as Village Trustee, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Tobias ("Tobias") filed a complaint against Defendant Village of Villa Park, Illinois, Richard Keehner, Robert Pavelchik Jr., Robert Budig, Robert Taglia, and John Davis (collectively "defendants"). Tobias alleges three counts: 1) violation of Plaintiff's due process rights pursuant to 42 U.S.C §1983; 2) intentional infliction of emotional distress; and 3) tortious interference with a business relationship. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the Court grants defendants' motion to dismiss.

**Background**

The Board of Fire and Police Commissioners hired Plaintiff William Tobias, a married resident of Elmhurst, Illinois, as a full-time police officer on June 23, 2011. Tobias was hired as a lateral by then Police Chief, John Heidelmeier. The Village of

1

Villa Park, Illinois ("the Village") is a municipal corporation organized under the laws of the State of Illinois, and Section 19-103(a) of the Municipal Code of the Village mandates a two-year probationary period for all newly hired police officers. Tobias served as a part-time police officer for the Village from September 1, 2010 to June of 2011.

Tobias asserts that while serving as a full-time police officer, he met or exceeded performance expectations for the Village and did not engage in, was not charged with, and was not accused of any misconduct during his employment. On February 28, 2012, Tobias was terminated from his employment. At the time of his termination, Tobias was at his wife's side in the hospital while she was giving birth to their child. Robert Budig, the serving Deputy Chief of Police, called Tobias and told him to report to the Police Department. Tobias alleges Budig was fully aware he was in the hospital with his wife who was in active labor at the time of his call. Upon reporting to the department, Police Chief Robert Pavelchick, notified Tobias he was discharged from his employment. At the time of Tobias' discharge, Robert Tagilia and John Davis served as Trustees for the Village and Richard Keener served as the Village Manager.

Tobias alleges that during his employment, defendants Taglia, Davis, Budig, and Keehner made false and malicious statements about his character. More specifically, Tobias alleges the rumors defendants spread were that former Police Chief Heidelemeir hired a lateral who was previously fired as a police officer from the Village of Oak Brook, and that the same officer also stalked an Oak Brook Village Trustee and vandalized her home. Because Tobias was the only full-time Village police officer whom formerly worked as an Oak Brook police officer and was hired as a lateral by

2

Heidelmeier, he asserts these statements refer to him. Additionally, Tobias alleges defendants said he was "no good" and that he should not remain on the force. Tobias further alleges that these statements were made in order to ensure that he was discharged from his employment, to inflict emotional distress, and to significantly diminish his future employment opportunities.

At the time of his termination, Tobias claims to have received no reason for his discharge. Tobias asserts that he has not been able to find employment as a police officer since his termination despite applying for many positions and being a qualified candidate.

Section 19-103 of the Municipal Code of the Village provides the procedure for terminating a probationary police officer. It states:

> (c) The review and determination of successful completion of the probationary period shall be determined by the board of fire and police commissioners pursuant to its rules and regulations.
>
> (d) If the board of fire and police commissioners determines that the police department recruit has not successfully performed his/her probationary period, the recruit's period of employment shall be terminated.

Despite the Municipal Code stating that the probationary period shall be determined by the Board of Fire and Police commissioners, Tobias alleges that instead the routine practice by the Village and its officials is to terminate a probationary police officer without first notifying the Board, as required by Village ordinance.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the

plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the claim's basis, and also state facts which establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The purpose of Rule 12 (b)(6) is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990).

**Discussion**

As an initial matter, Defendants assert that the Collective Bargaining Agreement ("CBA") supersedes the Village Municipal Code. Defendants contend that pursuant to the CBA, Tobias was properly discharged without cause and without any involvement from the Village Board. Tobias argues defendants' reliance on the CBA is improper because defendants failed to attach the CBA to their pleadings. The Court finds that the contract exception applies herein and defendants' attachment of the CBA to their motion to dismiss is proper. *See* 5 ILCS 315/15; *Wright v. Associated Insurance Companies Inc.,* 29 F.3d 1244 (7th Cir. 1994). Accordingly, the CBA governs and defendants' argument prevails.

*Count I Violation of Due Process Rights*

Defendants assert that because the CBA supersedes the Village Municipal Code, Tobias is not entitled to due process as the CBA vitiates any property interest in continued employment with the Village. Tobias contends that the Village, in adopting Section 19-103 of its Municipal Code, created a property right in employment for

probationary police officers. Tobias asserts that he was deprived of his property interest in continuing employment with the Village in violation of his due process rights pursuant to 42 U.S.C. § 1983. Section 1983 provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress… 42 U.S.C § 1983

Defendants maintain that pursuant to Illinois law, a collective bargaining agreement supersedes any contrary statutes, ordinances, or rules. The Illinois Public Labor Relations Act provides:

> any collective bargaining contract between a public employer and a labor organization executed pursuant to this Act shall supersede any contrary statutes, charters, ordinances, rules, or regulations relating to wages, hours and conditions of employment and employment relations adopted by the public employer or its agents. 5 ILCS 315/15

The CBA states that "[d]uring the probationary period, an officer is subject to discipline, including discharge, without cause and with no recourse to the grievance procedure or any other forum." Tobias' probationary, at-will status must be resolved in favor of the CBA. *See Brownlee v. City of Chicago*, 983 F. Supp. 776 (N.D. Ill. 1997). Even though Tobias alleges no conflict between the Municipal Code and the CBA, he is not entitled to separate rights based on state-law provisions whose subject matter overlaps the CBA. *Id.* Per the CBA, Tobias was in the two-year probationary period of his employment when he was discharged as an at-will employee, which belies any property interest in continued employment with the Village. Therefore, Tobias' due process claim fails.

*Count II Intentional Infliction of Emotional Distress*

Defendants argue Tobias fails to make a claim for intentional infliction of emotional distress under Illinois law. Tobias asserts that despite his excellent performance as a full-time police officer, defendants began to convey false information regarding his character and behavior, which amounted to an intentional infliction of emotional distress. Tobias alleges the disparaging statements damaged his employment with the Village, as well as any future employment prospects.

In order for conduct to rise to an actionable level of emotional distress, the conduct must be extreme and outrageous; the actor must either intend that his conduct will inflict severe mental distress or know that there is a high probability that his or her conduct would cause emotional distress; and the conduct must in fact cause severe and emotional distress. *McGrath v. Fahey 126* Ill. 2d 78 (1988) (citing *Pub. Fin. Corp. v. Davis* 360 N.E. 2d 765 (Ill. Sup. Ct. 1977)). A viable claim for emotional distress does not include "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *McGrath*, 126 Ill. 2d. 78 (citing Restatement (second) of Torts § 46 comment d, at 75 (1965)).

To determine whether behavior is "outrageous" the degree of power or authority a defendant has over a plaintiff and his actual ability to affect the plaintiff's interests must be considered. *Id*. Specifically, when a defendant makes either an implicit or explicit threat, and has the authority to carryout said threat, the conduct is outrageous. *McGrath*, 126 Ill. 2d. Hatred is not enough and defendant will be liable only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 80 (citing Restatement (Second) of Torts § 46, comment D (1965)).

Here, the defendants' statements do not rise to an actionable level of emotional distress because Tobias has not established that defendants' conduct was extreme and outrageous. First, the complaint does not allege that any threats were made. Tobias only claims statements were made regarding him being a bad hiring decision, that he stalked the home of a trustee, and that he had to be restrained from following her. Even if such rumors were deemed hateful, hatred is not enough. *Id.* (holding that statements characterized by malice do not amount to emotional distress). Additionally, while defendants may have had power over Tobias as trustees for the City, the alleged comments were not facilitated by their positions of power.

Lastly, Tobias fails to prove that defendants knew he was susceptible to emotional distress. Tobias asserts that because defendants knew his wife was in labor when they ordered him in to be discharged, they "intended to create the most stressful situation possible" for him. If the discharge was handled as alleged, the Court agrees that it seems unnecessarily stressful to say the least. However, creating a stressful situation for someone is not actionable. The Seventh Circuit has stated that in order to survive a Rule 12(b)(6) motion, "a plaintiff has the obligation to provide the factual grounds of his entitlement to relief (more than mere labels and conclusions), and a formulaic recitation of a cause of action's elements will not do." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (citations and quotations omitted). Accordingly, Tobias fails to make a claim for intentional infliction of emotional distress.

*Count III Tortious Interference with a Business Relationship*

Defendants argue that Tobias has failed to allege facts that establish any of the required elements to state a cause of action for a tortious interference with a business relationship. Tobias contends that the comments made by defendants "seriously damage" his future job prospects. In Illinois, to establish an actionable claim for tortious interference with a prospective business or economic advantage, Tobias must prove the following four elements: (1) he had a reasonable expectation of entering into a valid business relationship; (2) defendants had knowledge of his expectancy; (3) purposeful or intentional interference by the defendants that prevents his legitimate expectancy from ripening into a valid business relationship; and (4) damages resulting from the interference. *Labor Ready, Inc. v. Williams Staffing. L.L.C.,* 149 F.Supp.2d 398, 410 (N.D. Ill. 2001) (citation omitted). Tobias' claim of tortious interference fails because an at-will employee has no enforceable contractual right to employment. Under Illinois law, a party-employer, who by statute is authorized to terminate its probationary employee, cannot tortuously interference with its own contract for one of its own employees. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495 (1991). Accordingly, Tobias fails to state a claim for tortious interference with a business relationship.

**Conclusion**

Even when viewed in the light most favorable to Plaintiff, he fails to state a claim upon which relief can be granted. For the reasons stated herein, this court grants defendants' motion to dismiss [20] with prejudice.

IT IS SO ORDERED.

Date: July 30th, 2014

Entered